## IN RE: ADOPTION OF P.M. and J.M.

### Case No. 85-1111-FR

Nineteenth Judicial Circuit, St. Lucie County

April 20, 1988

### OPINION OF THE COURT

JOHN E. FENNELLY, Circuit Judge.

This matter came on for hearing pursuant to Petitioner, Betty Marshall's Motion to set aside a previously entered Final Order of Adoption. The motion is timely within the meaning of F. S. 63.182 and Fla. R. Civ. P. 1.540. This matter was tried to the Court upon three issues that, in Petitioner's view, rendered the Final Judgment infirm, i.e., (A) Uniformed Consent, (B) Undue Influence, and (C) Defective Consent.

The evidence at trial revealed that Petitioner is presently 33 years of age, has completed two years of high school and is of low intelligence. The evidence further revealed that she suffers from epilepsy for which

she takes medication. Petitioner has a history of depression but the psychiatric evidence does not indicate any history of disorder that interfere with cognitive functioning.

The Petitioner met the Whites in 1983 as a result of religious activities that included the Whites and Mrs. Dozier, a sister of Mrs. White. The relationship deepened and Mrs. Marshall in early 1984 became a member of the church that Mrs. Dozier and the Whites actively directed. In approximately April of 1985, Mrs. Marshall requested that the Whites became Godparents for Patricia. The Whites were initially hesitant but after repeated requests by both Mrs. Marshall and Patricia, acceded.

After this religious ceremony, Mrs. Marshall broached the subject of both Patricia and Jerry going to live with the Whites on a permanent basis. The Whites were again hesitant, but, after repeated requests, agreed contingent upon Mrs. Marshall agreeing to an adoption. Mrs. Marshall agreed without reservation indicating to the Whites that that was what she in fact wanted as she could not, due to health and economic reasons, adequately care for the children. Significantly, Mrs. Marshall was, at the same time, attempting to have Mrs. Dozier adopt another of her children for the same reasons.

The evidence also clearly reveals that Mrs. Dozier was the pastor of the church attended by both the Whites and Mrs. Marshall and counseled Mrs. Marshall concerning her difficulties concerning the children. Mrs. Dozier testified that Mrs. Marshall approached her concerning the adoptions of Cynthia and that she (Dozier) attempted to dissuade Mrs. Marshall. Mrs. Marshall told Dozier she didn't want further responsibility for Cynthia as she was out of control. There is no indication whatsoever that would justify a conclusion that Mrs. Dozier used her fiduciary relationship to either the advantage of her sister, Mrs. White, or herself in initiating either the adoption of Cynthia, Jerry or Patricia. The evidence, on the contrary, reveals that the idea of the adoption of the children originated with Mrs. Marshall because she felt incapable of caring for the children.

The evidence further reveals that both the Whites and Mrs. Dozier utilized the services of Mr. Steve Hoskins, an attorney in Fort Pierce, in the adoption of Jerry and Patricia and the proposed adoption of Cynthia. Mr. Hoskins testified that he informed Mrs. Marshall of the nature and legal significance of adoption, that Mrs. Marshall supplied the information on the Petition for Adoption; and during his interview, the respondent advised that due to her health and financial problems she wished to have Jerry and Patricia adopted by the Whites. In Mr.

Hoskins' view, Mrs. Marshall did not appear disoriented, her answers were responsive and she appeared to understand the significance and legal result of adoption.

The Court also heard evidence from the minor children, Sharon Demps, HRS caseworker assigned to the Dozier and White adoption, and M. Carter, all of whom unequivocally testified that the idea of adoption originated with Mrs. Marshall and that she fully understood both the significance of and the effect of the adoption process.

On March 10, 1986, a final hearing was held concerning the adoption of Jerry and Patricia. At that hearing, Mrs. Marshall as well as Patricia appeared and orally consent to the proposed adoption. The trial court required, in addition to the oral consents adduced at the hearing, written consents to the adoption. They were obtained and the Court on April 9, 1986, entered a Final Order of Adoption. Petitioner made no objection to the adoption until months later and filed this action on April 6, 1987, after relations between her and the Whites became acrimonious.

In view of the foregoing factual determinations, the Court reaches the following legal conclusions.

The Court, as indicated infra., is convinced beyond any reasonable doubt that the Mother fully understood both the nature and legal consequences of her actions, i.e., termination of her rights as a parent. Thus in the absence of fraud, duress or undue influence her consent is irrevocable; *Grabovetz v. Sachs*, 262 So. 2d 703 (Fla. 3d DCA 1972). That this principle continues to be the law in Florida was recently reaffirmed in *In Re: Adoption of C.L.W.*, 467 So.2d 1106 (Fla. 4th DCA 1985) when the Court citing *Grabovetz* reaffirmed the irrevocability of consent in the absence of previously mentioned factors.

The Court is somewhat concerned, however, about the relationship of the parties to this adoption. As indicated, Mrs. Dozier, the sister of Mrs. White, clearly enjoyed a relationship of trust and confidence with Mrs. Marshall. In addition, both Mr. and Mrs. White, were also in a situation that it is apparent that Betty Marshall placed trust in them. Applying contract analogies, it is a general rule of law that a presumption of undue influence arises from transactions between persons who share a fiduciary relationship. The foregoing general rule is, however, not operative unless the person or persons enjoying the dominant position actively procure or encourage the result or transaction. (See Fla.Jur. 2nd *Contracts* 49, 50).

As indicated previously, the credible evidence before the Court leads inevitably to the conclusion that Mrs. Marshall was the party who

34

instigated the adoption based on her perceived inability to adequately provide for her children. Thus, Petitioner at the outset has failed to adduce proof that is sufficient to trigger the presumption of overreaching so as to call into question the voluntariness of her consent.

Assume arguendo that the foregoing analysis is incorrect, Respondent Whites must then either, depending on the proper analysis under the evidence code, carry the burden of proof with regard to the presumed fact if this is a presumption effectuating public policy (See generally F.S. 90.301, 302, 303 and 304) or merely came forward with a reasonable explanation of the event if the presumption is one that merely facilitates the determination of the particular action. As Professor Ehrhard has noted, this is the classic legal debate between Thayer's bursting bubble and Morgan's shift. (See *Ehrhardt Fla. Evidence* at pages 70, 71 and 72).

In a recent case, the Fourth District Court through Judge Hersey seemed to espouse the view, albeit somewhat cryptically, that in the area of adoptions, the presumption are of the 90.303 variety, i.e. the bursting bubble variety.

In the absence of clear case authority, however, and in light of the policy issues involved, the Court concurs with the standard of proof required by Judge DeFoor in *Chartier v. John Doe,* 11 Fla.Supp.2d 8 (Sixteenth Judicial Circuit, 1985), i.e., clear and convincing. Thus, the Court has cast upon the Whites the burden of proof in this issue in accordance with F.S. 90.304 and finds that they have carried that burden and proved the nonexistence of the presumed fact by clear and convincing evidence.

In the last analysis, this was not a case like *In Re: Adoption of P.R. McD,* 440 So.2d 57 (Fla. 4th DCA 1983) involving strong arm tacts or overreaching. Rather, it was one in which a mother overwhelmed by physical and economic pressure sought relief in surrendering her parental rights. That she now regrets her action is understandable, but not sufficient to revoke her freely given consent.

The Petition to revoke consent is therefore denied.

DONE AND ORDERED in Fort Pierce, St Lucie County, Florida, this 20th day of April, 1988.